Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Plaintiff
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: (646) 328-0120
Nicholas P. Giuliano (NG 1060)
Richard J. Colosimo (RC 2975)



RECEIVED
MAR 0 2 2011
U.S.D.C. S.D. N.Y.
COMPLETED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TUV INVESTMENTS LLC,

        Plaintiff,

11 CV 1437 (RMB)
ECF Case

- against-

**COMPLAINT**

HAPPY ROCK, LLC, HAPPY ROCK CAPITAL LLC, and
HAPPY ROCK MERCHANT SOLUTIONS LLC,

        Defendants.
-----------------------------------------------------------------X

    Plaintiff, TUV INVESTMENTS LLC, by its attorneys, Bennett, Giuliano, McDonnell & Perrone, LLP, alleges as follows:

    1.    Plaintiff, TUV INVESTMENTS LLC ("TUV"), is a Florida limited liability company with its principal place of business 916 Bermuda Gardens Road, Delray Beach, FL 33483. Its sole member, an individual, is a resident of the State of Florida.

    2.    Defendant HAPPY ROCK, LLC ("HAPPY ROCK") is a limited liability company duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business at 345 Haines Road, Bedford Hills, NY 10507.

    3.    Defendant HAPPY ROCK CAPITAL LLC ("HAPPY CAPITAL") is a limited liability company duly organized and existing under and by virtue of the laws of the State of

New York with its principal place of business at 419 Park Avenue South, 7th Floor, New York, NY 10016.

4. Defendant HAPPY ROCK MERCHANT SOLUTIONS LLC ("HAPPY MERCHANT") is a limited liability company duly organized and existing under and by virtue of the laws of the State of New Jersey with its principal place of business at 419 Park Avenue South, 7th Floor, New York, NY 10016.

5. Upon information and belief, none of the members of the LLC defendants is a citizen of the State of Florida.

6. This Court has subject matter jurisdiction in this case because of the complete diversity between plaintiff and defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has personal jurisdiction over defendants based on their transaction of business or doing business in the State of New York pursuant to C.P.L.R. §§ 301 and 302.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a).

9. Trial by jury is demanded.

## GENERAL ALLEGATIONS

10. TUV is in the advance factoring business, which is the business of buying merchants' future receivables on a net present value basis.

11. The Defendants are in the same business as TUV and are competitors of TUV.

12. By contract effective September 19, 2009, TUV purchased $273,600 of future credit card receivables from Tabell, Inc., a Kansas corporation, (the "Merchant") at a net present value price of $190,000.

13. TUV filed a UCC-1 financing statement with respect to the purchase from the Merchant, as permitted by the UCC.

14. TUV entered into a contract with the Merchant, pursuant to which the Merchant agreed, among other things, (1) to process its credit card sales only through a credit card processor approved by TUV ("Approved Processor"), and (2) to direct the Approved Processor to send to TUV an agreed upon percentage of the Merchant's credit card sales.

15. After TUV paid the Merchant and purchased a portion of its future receivables, at least one of the Defendants advanced money to and purchased future receivables from the very same Merchant.

16. Upon information and belief, at least one of the Defendants entered into a contract with the Merchant on terms substantially similar to TUV.

17. A representative of the Defendants called TUV and was informed that TUV had previously purchased receivables from the Merchant. The representative of the Defendants was also specifically told about the UCC-1 financing statement filed by TUV.

18. The Defendants knew or should have known that TUV had a contract with the Merchant for the purchase and sale of future accounts receivable.

19. The Defendants knew or should have known that the Merchant had sold a portion of its future credit card receivables to TUV.

20. The Defendants knew or should have known that the Merchant had a contract with TUV that required it to process all of its credit card transactions exclusively through an Approved Processor until the sales agreement with TUV had been fully performed.

21. Upon information and belief, the Defendants thereafter improperly influenced the Approved Processor to withhold delivery of accounts receivable owned by TUV.

22. Upon information and belief, the Defendants thereafter improperly influenced the Merchant to breach the sales agreement and cause deliveries of accounts receivable to TUV to cease.

23. TUV sued the Merchant and its affiliates in state court in Kansas. The parties entered into an executory accord, which included specific payment obligations of the Merchant and its affiliates.

24. Upon information and belief, the Merchant described and/or provided the executory accord to the Defendants.

25. The Defendants knew or should have known that there was an executory accord between TUV and the Merchant and its affiliates.

26. The Defendants knew or should have known that the executory accord obligated the Merchant to process all of its credit card transactions exclusively through an Approved Processor until the executory accord had been fully performed.

27. Upon information and belief, the Defendants had previously negotiated with the Merchant for a payment equivalent to greater than 10% of the amount of credit card receivables deliverable to the Merchant.

28. After learning of the existence of the executory accord and its terms, the Defendants improperly, maliciously, and without justification influenced the Merchant to breach the terms of the sale agreement and of the executory accord.

29. Upon information and belief, the Defendants offered to accept a payment of only 6% of the amount of credit card receivables deliverable to the Merchant and thereby prevent payments by the credit card processor to TUV as set forth in the executory accord.

30. Defendants had no justification for taking reduced payments other than to impede the delivery of TUV's property, credit card receivables already owned by it under the purchase and sales agreement, by precipitating the breach of the executory accord.

31. Upon information and belief, Defendants had other viable means of receiving their payments from the Merchant under the terms of their contracts or agreements with the Merchant.

## FIRST CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT

32. TUV repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33. Prior to entering into a credit card processing agreement with the Merchant Defendants knew (1) that Merchant had agreements with TUV that required Merchant to process its credit card transaction only with an Approved Processor and (2) that Merchant had directed the Approved Processor to send to TUV an agreed-upon percentage of the Merchant's credit card sales.

34. Defendants knowingly induced the Merchant to breach its contract with TUV by entering into a cash advance contract or contracts with Merchant, inducing it to transfer its credit card processing to a processor other than an Approved Processor, and diverting the proceeds of credit card sales from TUV to Defendants and to Merchant.

35. Defendants tortiously interfered with TUV contracts with the Merchant by, without justification, inducing or causing the Merchant's breach of the sales agreement and of the executory accord.

36. By reason of the foregoing, TUV has been caused to sustain damages in the amount of $136,692.55 plus interest, costs, disbursements, and attorneys' fees.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

37. Plaintiff repeats and realleges paragraphs 1 through 36 above with the same force and effect as if set forth herein at length.

38. As a result of Defendants' diversion of the Merchant's credit and debit transactions from an Approved Processor to another processor, Defendants have been unjustly enriched by retaining the proceeds of credit card receivables that rightfully belong to TUV.

39. By reason of the foregoing, TUV has been caused to sustain damages in the amount of $136,692.55 plus interest, costs, disbursements, and attorneys' fees.

## THIRD CAUSE OF ACTION
## CONVERSION

40. Plaintiff repeats and realleges paragraphs 1 through 39 above with the same force and effect as if set forth herein at length.

41. By diverting of the proceeds of credit card receivables to itself and by retaining the proceeds of credit card receivables that rightfully belong to TUV, Defendants have converted said proceeds to their own use.

42. By reason of the foregoing, TUV has been caused to sustain damages in the amount of $136,692.55 plus interest, costs, disbursements, and attorneys' fees.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT

43. Plaintiff repeats and realleges paragraphs 1 through 42 above with the same force and effect as if set forth herein at length.

44. In the advance factoring industry and between TUV and Defendants there exists an implied contract or a custom and practice whereby a subsequent advance factoring company, *i.e.*, a advance factoring company that purchases future receivables from a merchant who has not completely performed an existing advance factoring contract with a previous advance factoring company, must fully satisfy the previous advance factoring contract(s) when purchasing receivables from a merchant.

45. One rationale for this implied agreement is that all advance factoring companies know that a credit card processor may not direct payments to two additional parties; the rules of credit card companies allow only one additional payment besides the merchant.

46. Advance factoring companies know that interference with the delivery of receivables purchased by a peer company goes to the heart of the risk accepted by the prior company and is inherently unfair, disruptive, damaging, and prejudicial.

47. Prior to and even after the contract referred to in this complaint, TUV and Defendants regularly and repeatedly complied with and honored the implied contract or industry custom and practice of satisfying all existing advance factoring contracts when entering into new advance factoring contracts with merchants.

48. There exists an implied contract between TUV and Defendants whereby each company agreed to satisfy pre-existing advance factoring contracts when funding merchants.

49. By entering into advance factoring contracts with the Merchant, but without satisfying TUV's existing contract with the Merchant, Defendants breached the implied contract with TUV or breached a binding industry custom and practice.

WHEREFORE, Plaintiff demands as follows:

1. That judgment be entered in favor of plaintiff against defendants on each cause of action in the amount of $136,692.55.

2. That plaintiff be award punitive damages consistent with law;

3. That plaintiff be awarded interest, costs, disbursements, and attorneys' fees; and

4. That the plaintiff have such other, further, and different relief as may be just, proper, and equitable.

Dated: New York, New York
February 28, 2011

Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Plaintiff
TUV INVESTMENTS, LLC

_____
Nicholas P. Giuliano
Richard J. Colosimo
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone:   (646) 328-0120

TO:   HAPPY ROCK, LLC
345 HAINES ROAD
BEDFORD HILLS, NY 10507

HAPPY ROCK MERCHANT SOLUTIONS LLC (A New Jersey LLC)
419 PARK AVENUE SOUTH
7TH FLOOR
NEW YORK, NEW YORK, 10016

HAPPY ROCK CAPITAL, LLC
419 PARK AVENUE SOUTH, 7TH FLR
NEW YORK, NEW YORK, 10016

Z:\Casework\M Cases\M136 HAPPY ROCK\Pleadings\Complaint-072808.doc